IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

**FILED**

NOV 20 2012

Clerk, U.S District Court
District Of Montana
Missoula

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 11-27-BU-DWM |
| | CV 12-49-BU-DWM |
| Plaintiff/Respondent, | |
| vs. | ORDER DENYING § 2255 MOTION |
| | AND DENYING CERTIFICATE |
| ANGELLA LEANN PARKER, | OF APPEALABILITY |
| Defendant/Movant. | |

On July 23, 2012, Defendant/Movant Angella Parker ("Parker"), a federal prisoner proceeding pro se, filed a motion to vacate, set aside, or correct her sentence, pursuant to 28 U.S.C. § 2255. She also submitted a letter dated October 31, 2012.

On October 22, 2012, the United States was ordered to obtain certain transcripts to support a review and determination of Parker's claims. The transcripts were filed on November 6, 2012.

**I. Preliminary Screening**

The motion is subject to preliminary review to determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255

1

Proceedings for the United States District Courts.

A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court,* 98 F.3d 1102, 1109 (9th Cir. 1996) (*"Nicolaus"*) (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). "[I]t is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

On September 23, 2011, Parker was indicted on one count of conspiring to distribute a substance containing more than 500 grams of methamphetamine, a violation of 21 U.S.C. §§ 846 and 841(a). Indictment (doc. 1) at 2-3. If convicted, Parker faced a ten-year mandatory minimum sentence. 21 U.S.C. § 841(b)(1)(A). Attorney Katie Olson was appointed to represent Parker. Order (doc. 20).

On November 10, 2011, the parties filed a fully executed plea agreement. On November 30, 2011, Parker pled guilty in open court before United States Magistrate Judge Jeremiah C. Lynch. Parker acknowledged that she would waive her right to appeal "if the defendant has no objection to the calculation of the guidelines and the

2

sentence imposed is within or below the range." Plea Agreement (doc. 36) at 8 ¶ 8. Judge Lynch recommended Parker should be adjudged guilty. Findings and Recommendation (doc. 57) at 2. In addition, at the conclusion of the hearing, Judge Lynch specifically emphasized that Parker's problem with oxycontin was a serious threat to her continued pretrial release and also could give rise to additional charges. Sentencing was set for March 9, 2012. Minutes (doc. 51); Order (doc. 53).

On January 10, 2012, the pretrial services officer filed a petition to revoke Parker's pretrial release because she sold Oxycontin pills to an informant between December 25, 2011, and January 9, 2012. Pet. for Action (doc. 61) at 2. In addition, two bottles of frozen urine were found in the freezer in her residence, and she admitted she had used that tactic to pass drug tests administered by the State's Department of Family Services. Presentence Report ¶ 35. She was taken into custody and detained pending sentencing. Minutes (docs. 65, 70).

Defense counsel sought a two-point downward adjustment in the offense level for acceptance of responsibility, U.S.S.G. § 3E1.1(a), but the adjustment was denied because Parker violated the terms of her pretrial release. A two-point downward adjustment for minor role in the offense was also denied. Parker was, however, given the benefit of the safety valve, 18 U.S.C. § 3553(f), U.S.S.G. § 5C1.2. Based on a total offense level was 30 and a criminal history category of I, her advisory guideline

range was 97-121 months. Due to the application of the safety valve, she was not subject to the ten-year mandatory minimum. On March 9, 2012, she was sentenced, not only below the statutory mandatory minimum but also below the guideline range, to 72 months in prison, to be followed by a five-year term of supervised release. Minutes (doc. 76); Judgment (doc. 78) at 2-3.

Parker did not appeal. Her conviction became final fourteen days after sentencing, on March 23, 2012. *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 653-54 (2012); Fed. R. App. P. 4(b). She timely filed her § 2255 motion on July 23, 2012. 28 U.S.C. § 2255(f)(1).

### III. Parker's Claims

Parker's claims are reorganized here, but all are addressed.

Parker alleges, first, that she was convicted merely because she "became acquainted with many people from all positions in society." Mot. § 2255 (doc. 113) at 15. She also avers that "several witnesses . . . would be willing to refute" Sheffield's allegations against her and could "provide testimony that Mr. Sheffield sold drugs to them and to myself." *Id.* at 20; Presentence Report ¶ 30. As to Shelly Pruett, Parker contends that she bought drugs from Pruett, not the other way around as Pruett said. Mot. § 2255 at 20; Presentence Report ¶ 20. Parker also avers that her "charges became federal" because Sheffield used her address to receive packages "to

keep his wife from knowing" and, although she mailed one package for Sheffield, she did not ask what was in it because she "felt it was private." Mot. § 2255 at 21-22. These facts are alleged in connection with Parker's first, fourth, fifth, and sixth grounds for relief.

Second, she claims she violated the conditions of her pretrial release as "an act of my desperation and addiction" and she thereby lost "a two year sentence." *Id.* at 16.

Third, Parker states that Agent Stavlo approached her in a store "about another meeting that I was supposed to arrange with federal agents and the prosecution" and told her "my plea agreement would be affected if I did not arrange this meeting." Parker claims she contacted her attorney but the meeting still was not arranged and, as a result, "it was too late. The agents then took steps to set up more charges against me." *Id.* at 16. She suggests this is what caused her to "turn back to drugs." *Id.* at 20.[1]

Parker explains that she did not raise these claims on appeal because Olson told her she "was lucky to only get 72 months." Because she "was worried about receiving a longer sentence," she did not "follow thru on my appeal although I did ask

---

[1] Parker's motion included three duplicate pages, so the pages of her motion as numbered here may not correspond with her copy.

5

my lawyer about it." Mot. § 2255 at 5. She also states that she believed she was "bound by the plea agreement regardless of circumstances because I violated in January," "was under the impression that I had signed away my right to appeal with my plea agreement," and "had no response from my attorney." *Id.* at 6-11.

For her relief, Parker seeks "a lighter sentence." *Id.* at 14.

## IV. Analysis

Although some if not all of Parker's claims are likely barred by her guilty plea, her plea agreement, and/or her failure to appeal, all are addressed here *de novo* and on the merits.

### A. Evidence About the Offense

Parker's first, fourth, fifth, and sixth grounds for relief may be construed to allege that she was not guilty of the offense. Her fourth, fifth, and sixth grounds may also be construed as challenges to the length of her sentence.

#### 1. Conviction

At her change of plea hearing, Parker admitted the following facts:

Since November 2010, agents from Homeland Security Investigations and the Butte Silver Bow Law Enforcement Agency have been investigating the distribution of methamphetamine in and around Butte by Sheffield, Parker, White, and others. On January 5, 2011, based on information obtained during that investigation, law enforcement officers searched Sheffield's car and the Sheffield/White residence at 1314 Farrell Street in Butte. From the house they seized baggies of meth,

6

> surveillance cameras, drug paraphernalia and a FedEx receipt with Parker's name on it. White admitted during the search that she and Sheffield shared the house and the meth that was seized was found in their bedroom. The officers found more meth in Sheffield's possession during a search of his person and his car outside a nearby casino.
>
> Also on January 5, 2011, before the search of Sheffield's and White's residence, Parker was stopped for a traffic violation and admitted to having just purchased an "8-ball" of meth from Sheffield. She also admitted that during the course of the conspiracy she had received packages of methamphetamine from Arizona that were intended for Sheffield and had shipped money to Arizona as payment for the drugs.

Offer of Proof (doc. 47) at 3-4; *see also* Presentence Report ¶ 13 (Parker admitted receiving for Sheffield two packages weighing over a pound; though she did not open them, she "believed the packages contained methamphetamine."); *id.* ¶ 21 (Parker admitted that Sheffield and a man in Arizona told her a package she sent to Arizona was "intercepted by law enforcement" and instructed her to say "the money was for a down payment on a house in Anaconda"); Change of Plea Tr. (doc. 128) at 20:23-21:12.

In other words, the principal evidence establishing Parker's guilt consisted of Parker's own statements, supported by seizures from Sheffield's home. Sheffield's and Pruett's statements about her were not the most important evidence in convicting her. Parker did not admit those statements were correct, and the United States did not purport to rely principally on them in support of her guilty plea. There is no reason

7

to believe that a jury might acquit Parker if Sheffield's and Pruett's statements about her were not used in evidence against her.

## 2. Sentence

Sheffield's[2] statement that Parker was "the primary person who distributed the bulk of his drugs" was important, Presentence Report ¶ 30, but "even setting that aside and looking all the other information," I concluded at the sentencing hearing that her role was neither minimal nor minor nor minimal, Sentencing Tr. (doc. 127) at 26:5-27:21. Parker herself stated that she was a very heavy user of methamphetamine. She said she was "buying two grams from Sheffield every other day throughout the year." Presentence Report ¶ 27. She did not obtain that quantity of methamphetamine for nothing. *Cf. id.* ¶ 77 (Parker was unemployed and on disability benefits for the previous five years). In addition, when Parker was arrested, she said she had just bought from Sheffield the eight-ball of methamphetamine found in her car – about 3.4 grams, not two. *Id.* ¶¶ 12-13. And, while Sheffield was in jail and Parker was on pretrial release, she further demonstrated independence from Sheffield and initiative in using drugs as money by selling her oxycontin. *Id.* ¶ 35. Although the probation officer noted Parker's disagreement with Sheffield's and

---

[2] Sheffield, the principal actor in the conspiracy, was sentenced to the mandatory minimum of 120 months and a ten-year term of supervised release. Minutes (doc. 82); Judgment (doc. 83) at 2-3.

8

Pruett's statements, *see id.* ¶¶ 20, 30, and that disagreement was noted, Sentencing Tr. at 24:16-21, 26:13-16,[3] their statements, along with Parker's own statements and conduct, were sufficiently reliable to support denial of the downward adjustment.

Finally, Parker appears to believe that use of the mail is the reason she was prosecuted in federal court. Drug trafficking is a federal crime, regardless of whether the mail is used and regardless of whether state lines are crossed by drugs or by the participants in the crime. *E.g.*, *United States v. Rodriguez*, 360 F.3d 949, 957 (9th Cir. 2004).

Parker's first, fourth, fifth, and sixth grounds for relief are denied.

## B. Pretrial Violation and Two-Year Sentence

Parker is correct that she lost the two-point credit for acceptance of responsibility by violating the conditions of her pretrial release. She also lost a third point, because the United States may move for a third point only if the defendant obtains the first two. U.S.S.G. § 3E1.1(a), (b).

But Parker lost those credits entirely on her own. She does not deny she sold oxycontin even after she had been arrested on a federal indictment, was advised that she faced a ten-year mandatory minimum if convicted on that charge alone, and was

---

[3] As the whole of the Sentencing Transcript shows, Pruett's statements were not significant to my view of the case.

9

clearly and unambiguously warned by Judge Lynch that she should not do anything illegal. In fact, Judge Lynch specifically warned her she must not do anything illegal *with oxycontin*. Change of Plea Tr. at 23:12-25:3.

Thus, even assuming, for the sake of argument, that Olson and Racicot told Parker she could obtain a two-year sentence if she both accepted responsibility and provided substantial assistance,[4] she could have had no illusions about what would happen if she committed a crime before sentencing. The plea agreement said:

> The defendant acknowledges that if she commits any local, state, or federal crime (other than at the direction of law enforcement in furtherance of an investigation) that diminishes the defendant's credibility or effectiveness as a witness, the United States may, in the prosecutor's discretion, refuse to file any departure motion even though the defendant may have also provided assistance which is otherwise considered substantial.

Plea Agreement at 10 ¶ 9; *see also* Sentencing Tr. at 13:1-7 (explaining that Parker's selling oxycontin could be viewed as meaning she was participating in drug trafficking crimes that she had not disclosed to law enforcement).

Despite the clear warning in the Plea Agreement, and despite Judge Lynch's

---

[4] By itself, this seems unlikely. Had Parker not forfeited the credit for acceptance of responsibility, and had everything else remained the same, her total offense level would have been 27, and her advisory guideline range would have been 70-87 months – not 24 months. Perhaps Parker is thinking of co-defendant White's sentence, *see* Judgment (doc. 102) at 2-3, but neither Parker nor anyone else ever said that White sold methamphetamine. White pled guilty to allowing Sheffield, her husband, to store methamphetamine at their house. *Id.* at 1; Indictment at 3 (Count 3). Her offense simply was not the same as Parker's.

10

very specific advisement, Parker sold oxycontin. She has no respectable means of complaining about the impact of that choice on her sentence in this case. This claim is denied.

### C. Agent Stavlo

Parker states that Agent Stavlo approached her in a store "about another meeting that I was supposed to arrange with federal agents and the prosecution" and told her "my plea agreement would be affected if I did not arrange this meeting." Parker claims she contacted her attorney but the meeting still was not arranged and, as a result, "it was too late. The agents then took steps to set up more charges against me." *Id.* at 16. She suggests this is what caused her to "turn back to drugs." *Id.* at 20; *see also* Sentencing Tr. at 34:11-21.

If Agent Stavlo said these things, *see* Presentence Report ¶ 8, his conduct was reprehensible. He has no authority whatsoever to advise anyone about such matters. But it is equally unacceptable to suggest a link between these statements and Parker's recourse to drug use or to suggest Parker was in any way "set up" to sell oxycontin. She was warned about it because she was known to have a prescription and known to have contacts among people who would be willing to give money or methamphetamine for it. Angella Parker sold it, not Agent Stavlo. This claim is denied.

11

**D. Appeal**

Parker herself states that she did not "follow thru" with an appeal. She also says that she consulted her attorney about appealing, but Olson told her she "was lucky to only get 72 months." Therefore, counsel was not ineffective with respect to filing of a notice of appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 479 (2000).

In addition, counsel reasonably advised Parker that she "was lucky to only get 72 months." As discussed at sentencing, the weight of authority favored the prosecution's position as to acceptance of responsibility, *United States v. Cooper*, 912 F.2d 344, 345-48 (9th Cir. 1990), and there was no basis for a substantial-assistance reduction. The two packages of methamphetamine shipped under Parker's name and with her knowledge, by her own admission, weighed over 500 grams. Presentence Report ¶¶ 13, 31. The guideline range was 97-121 months, and Parker's sentence was only 72 months. Parker claims this is a lot for a first offense, but she can make that statement only by ignoring the fact that she originally faced a ten-year mandatory minimum because she shared responsibility with others for bringing more than 500 grams of methamphetamine into Butte. In addition, had the sentence been lighter, state officials might have pursued charges based on the oxycontin sale. Detention Hr'g (doc. 129) at 3:21-5:3. C

Counsel's advice was reasonable and, at any rate, there was no reasonable

probability that Parker would have persuaded two appellate judges that the sentence was procedurally or substantively unreasonable or "greater than necessary." 18 U.S.C. § 3553(a); *Gall v. United States*, 552 U.S. 38, 51 (2007); *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). This claim is denied.

## V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Under the terms of the Indictment, Parker faced a mandatory minimum sentence of ten years. Her guideline range was 97-121 months. Although she lost the three-point credit for acceptance of responsibility, she was granted relief under the safety valve, as well as a variance, and was sentenced to serve 72 months in prison,

13

to be followed by a five-year term of supervised release. Her § 2255 motion seeks "a lighter sentence." She concedes that she did not "follow thru" with her appeal after consulting with her lawyer about it. Her claims do not present grounds for appeal that would have raised a reasonable probability of success. There are no open questions and there is no reason to encourage further proceedings. A COA is denied.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Parker's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (doc. 113) is DENIED;

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Parker files a Notice of Appeal;

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 12-49-BU-DWM are terminated and shall close the civil file by entering judgment in favor of the United States and against Parker.

DATED this 20th day of November, 2012.

Donald W. Molloy
United States District Court